# EXHIBIT A

# IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
# IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.

NAKIA JENKINS,
individually and on behalf of all
others similarly situated,    CLASS REPRESENTATION

    Plaintiff,    JURY TRIAL DEMANDED

v.

SIMPLY HEALTHCARE PLANS, INC.,
a Florida Corporation,

    Defendant.
_____/

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Nakia Jenkins brings this class action against Defendant Simply Healthcare Plans, Inc., and alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## NATURE OF THE ACTION

1. This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., ("TCPA"), arising from Defendant's violations of the TCPA.

1. Defendant is a medical plan provider.

2. To solicit new paying clients, Defendant engages in unsolicited marketing with no regard for privacy rights of the recipients of those messages.

3. Defendant caused thousands of unsolicited text messages to be sent to the cellular telephones of Plaintiff and Class Members, causing them injuries, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

4. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct. Plaintiff also seeks statutory damages on behalf of herself and Class Members, as defined below, and any other available legal or equitable remedies resulting from the illegal actions of Defendant.

## PARTIES, JURISDICTION, AND VENUE

5. Plaintiff is, and at all times relevant hereto was, an individual and a "person" as defined by 47 U.S.C. § 153(39), a citizen and resident of Pinellas County, Florida, and the subscriber and user of the cellular telephone number (574) ***-6987 (the "6987 Number").

6. Defendant is a Florida corporation with a principal of business in Miami, Florida. Defendant directs, markets, and/or provides substantial business activities throughout the State of Florida.

7. Defendant is subject to personal jurisdiction in Florida because this suit arises out of and relates to Defendant's contacts with this state. Defendant initiated and directed, or caused to be initiated and directed by its agent(s), telemarketing and/or advertising text messages into Florida via an ATDS and without the requisite prior express written consent in violation of the TCPA. Specifically, Defendant initiated and directed, or caused to be initiated and directed by its agent(s), the transmission of unsolicited text messages to Plaintiff in Florida. Plaintiff received such messages while residing in and physically present in Florida.

8. Venue for this action is proper in this Court because Defendant resides in Miami-Dade County and has, or usually keeps, an office for transaction of its customary business in Miami-Dade County. See §§ 47.011, 47.051, Florida Statutes.

9. All facts giving rise to this action occurred in the State of Florida.

10. Plaintiff has standing to maintain this action because she suffered a legal injury as a result of Defendant's violations of the TCPA, and because she is not requesting an advisory opinion

from this Court. Thus, Plaintiff has a sufficient stake in a justiciable controversy and seeks to obtain judicial resolution of that controversy

## THE TCPA

11.     The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

12.     The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

13.     The TCPA exists to prevent communications like the ones described within this Complaint. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

14.     In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

15.     The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

16.     A defendant must demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd.

7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

17. Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("The FCC has determined that a text message falls within the meaning of 'to make any call' in 47 U.S.C. § 227(b)(1)(A)").

**FACTS**

18. On or about March 18, 2020, Defendant sent the following text message to Plaintiff's cellular telephone number ending in 6987 ("6987 Number"):





19. At no point in time did Plaintiff provide Defendant with her express consent to be contacted by text message.

20. Plaintiff is the sole user and/or subscriber of the 6987 Number.

21. The number used by or on behalf of Defendant (855-647-2616) is known as a "long code," a standard 10-digit phone number that enabled Defendant to send SMS text messages en masse,

while deceiving recipients into believing that the message was personalized and sent from a telephone number operated by an individual.

22. Long codes work as follows: Private companies known as SMS gateway providers have contractual arrangements with mobile carriers to transmit two-way SMS traffic. These SMS gateway providers send and receive SMS traffic to and from the mobile phone networks' SMS centers, which are responsible for relaying those messages to the intended mobile phone. This allows for the transmission of a large number of SMS messages to and from a long code.

23. Further, the impersonal and generic nature of Defendant's text message demonstrates that Defendant utilized an ATDS in transmitting the messages.

24. To send the text message, Defendant used a messaging platform (the "Platform") that permitted Defendant to transmit thousands of automated text messages without any human involvement.

25. The Platform has the capacity to store telephone numbers.

26. The Platform has the capacity to generate sequential numbers.

27. The Platform has the capacity to dial numbers in sequential order.

28. The Platform has the capacity to dial numbers from a list of numbers.

29. The Platform has the capacity to dial numbers without human intervention.

30. The Platform has the capacity to schedule the time and date for future transmission of text messages.

31. To transmit the messages at issue, the Platform automatically executed the following steps:

> (1) The Platform retrieved each telephone number from a list of numbers in the sequential order the numbers were listed;

(2) The Platform then generated each number in the sequential order listed and combined each number with the content of Defendant's message to create "packets" consisting of one telephone number and the message content;

(3) Each packet was then transmitted in the sequential order listed to an SMS aggregator, which acts an intermediary between the Platform, mobile carriers (e.g. AT&T), and consumers.

(4) Upon receipt of each packet, the SMS aggregator transmitted each packet – automatically and with no human intervention – to the respective mobile carrier for the telephone number, again in the sequential order listed by Defendant. Each mobile carrier then sent the message to its customer's mobile telephone.

32. The above execution of Defendant's instructions occurred seamlessly, with no human intervention, and almost instantaneously. Indeed, the Platform is capable of transmitting thousands of text messages following the above steps in minutes, if not less.

33. The following graphic summarizes the above steps and demonstrates that the dialing of the text messages at issue was done by the Platform automatically and without any human intervention:



## CLASS ALLEGATIONS

**PROPOSED CLASS**

34. Plaintiff brings this action pursuant to Florida Rule of Civil Procedure 1.220(b)(2) and (b)(3) on behalf of the following "Class" (including "Class Members" and "Members")

> **All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message using the same type of equipment used to text message Plaintiff, from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number.**

35. Defendant and their employees or agents are excluded from the Class.

36. Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

### NUMEROSITY

37. Upon information and belief, Defendant has placed automated calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express written consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

38. The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

### COMMON QUESTIONS OF LAW AND FACT

39. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

>  (1) Whether Defendant made non-emergency calls to Plaintiff and Class members' cellular telephones using an ATDS;
>
>  (2) Whether Defendant can meet its burden of showing that it obtained prior

express consent to make such calls;

(3) Whether Defendant conduct was knowing and willful;

(4) Whether Defendant are liable for damages, and the amount of such damages; and

(5) Whether Defendant should be enjoined from such conduct in the future.

40. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

41. Plaintiff's claims are typical of the claims of the Class Members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

42. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### SUPERIORITY

43. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even

if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

44. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(b)
**(On Behalf of Plaintiff and the Class)**

45. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

46. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

47. The TCPA defines an "automatic telephone dialing system" (hereinafter "ATDS") as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id*. at § 227(a)(1).

48. Defendant – or third parties directed by Defendant – used equipment having the capacity to store telephone numbers, using a random or sequential generator, and to dial such numbers and/or to dial numbers from a list automatically, without human intervention, to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class.

49. These calls were made without regard to whether Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

50. Defendant violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express consent.

51. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Nakia Jenkins, on behalf of herself and the other members of the Class, prays for the following relief:

  a. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

  b. A declaration that Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, were willful and knowing;

  c. An injunction prohibiting Defendant from using an automatic telephone dialing system to call telephone numbers assigned to cellular telephones without the prior express consent of the called party;

  d. An award of actual, statutory damages, and/or trebled statutory damages; and

  e. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff and Class Members hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with Defendant and the calls as alleged herein.

Dated: June 3, 2020

**SHAMIS & GENTILE, P.A.**
*/s/ Andrew J. Shamis*
Andrew J. Shamis, Esq.
Florida Bar No. 101754
ashamis@shamisgentile.com
Garrett O. Berg, Esq.
Florida Bar No. 1000427
gberg@shamisgentile.com
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Telephone: 305-479-2299

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq.
Florida Bar No. 0100537
scott@edelsberglaw.com
Aaron M. Ahlzadeh, Esq.
Florida Bar No. 0111329
aaron@edelsberglaw.com
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Office: (786) 289-9471
Direct: (305) 975-3320
Fax: (786) 623-0915

**EISENBAND LAW, P.A.**
515 E. Las Olas Boulevard, Suite 120
Ft. Lauderdale, Florida 33301
Michael Eisenband
Florida Bar No. 94235
Email: MEisenband@Eisenbandlaw.com
Telephone: 954.533.4092

**HIRALDO P.A.**
Manuel S. Hiraldo
Florida Bar No. 030380
Email: mhiraldo@hiraldolaw.com
401 E. Las Olas Boulevard, Suite 1400
Ft. Lauderdale, Florida 33301
Telephone: 954.400.4713

**IJH LAW**
Ignacio J. Hiraldo
Florida Bar No. 0056031
14 NE First Ave. 10th Floor
Miami, FL 33132
Email: ijhiraldo@ijhlaw.com
Telephone: 786.351.8709

*Counsel for Plaintiff and the Class*